FILED

2016 Jun-16  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **HEATHER WADE for M.L.D., a minor child,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action Number |
| | ) | **4:15-cv-00579-AKK** |
| **vs.** | ) | |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Heather Wade ("Wade") brings this action on behalf of M.L.D. ("the Claimant"), a minor child, pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("the Commissioner"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision – which has become the decision of the Commissioner – is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.     Procedural History

In a determination dated January 13, 2000, the Commissioner initially found

M.L.D. disabled as of November 1, 1999.  (R. 21).  The Commissioner revisited

the issue again on February 24, 2004, and found that M.L.D. had a continuing

disability.  *Id*.  However, on May 25, 2012, the Commissioner determined that

M.L.D. was no longer disabled as of May 1, 2012, which prompted Wade to

request a hearing before an ALJ.  *Id*.  The ALJ subsequently denied M.L.D.'s

claim, (R. 18), which became the final decision of the Commissioner when the

Appeals Council refused to grant review, (R. 1-4).  Wade then filed this action

pursuant to §205(g) of the Act, 42 U.S.C. §405(g).  Doc. 1.

## II.    Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. §405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §405(g)

mandates that the Commissioner's "factual findings are conclusive if supported by

'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The district court may not reconsider the facts, reevaluate the evidence, or

substitute its judgment for that of the Commissioner; instead, it must review the

final decision as a whole and determine if the decision is "reasonable and

supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's finding. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.   Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if the claimant has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months. 42 U.S.C. §1382c(a)(3)(C)(i). The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity." 20 C.F.R. §§416.902, 416.906, 416.924(a), 416.926a(a); *see also* 20 C.F.R. pt. 404 subpt. P, app. 1 (the listings). The Commissioner has developed a

specific sequential evaluation process for determining whether a child claimant is disabled.  20 C.F.R. §416.924.  The three-step process requires a child to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that the impairment or combination of impairments meet, medically equal, or functionally equal the severity of an impairment in the listings. 20 C.F.R. §416.924.  An impairment medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §404.1526(a).  If the claimant's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are, instead, functionally equivalent in severity.  20 C.F.R. §§416.924(d), 416.926a(a). To qualify, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.[1]  20 C.F.R. §416.926a(a).  If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings, a finding of not disabled is reached and the claim is denied.  *See* 20 C.F.R. §416.924(d)(2).

However, a modified standard is applied in a cessation of benefits case.  The ALJ must first consider if there is evidence of "medical improvement" in the child's impairment.  20 C.F.R. §416.994a(a)(1).  Medical improvement means a

---

[1]  The ALJ considers the child's functioning in terms of six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving and manipulating objects; (5) caring for himself; and (6) health and physical well-being.  20 C.F.R. §416.926a(b)(1)(i)-(vi).

"decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled or continued to be disabled."  20 C.F.R. §416.994a(c).  "This is known as the 'comparison point decision' or CPD."  (R. 24).  If there is evidence of medical improvement, the ALJ must consider whether the impairment(s) the child had at the time of the CPD, now meets, or medically or functionally equals, the severity of the listing it met or equaled at the time of the CPD.  20 C.F.R. §416.99a(a)(1). If the answer is no, the ALJ will consider whether the child is currently disabled based on the current impairments, including any the child did not have at the time of the CPD.  20 C.F.R. §416.99a(b)(3).

## IV.   The ALJ's Decision

In performing the modified three step analysis, the ALJ found initially that the record showed that "medical improvement occurred as of May 1, 2012."  (R. 24).  Next, the ALJ found that "[s]ince May 1, 2012, the impairments that the claimant had at the time of the CPD[2] [did] not [meet], or medically [equal]," the severity of the listing they met, or equaled, at the time of the CPD in February 2004. (R. 25).  The ALJ then proceeded to the next step and found that "since May 1, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 26).

---

[2]  The reference here is to the February 24, 2004, continuing disability decision.

Consequently, the ALJ found that "the Claimant has not [been] disabled . . . since [May 1, 2012]," (R. 35).

## V.      Analysis

Wade contends that the ALJ's decision is not supported by substantial evidence of improvement that establishes that M.L.D. is no longer disabled.  Doc. 12 at 15-16.  Specifically, Wade alleges that the ALJ gave insufficient weight to the psychological evaluation of M.L.D. by Dr. David Wilson, and that the ALJ did not evaluate M.L.D.'s mental impairments under section 112.00.  *Id*. at 16-17.  As shown below, neither contention establishes that the ALJ committed reversible error.  Therefore, the court will affirm the ALJ's decision.

### 1. The ALJ afforded sufficient weight to Dr. Wilson's psychological evaluation

Dr. Wilson conducted a consultative psychological examination of M.L.D. during which he administered the Wechsler Intelligence Scale for Children-IV ("the WISC-IV").  (R. 31, 404).  The test results showed that M.L.D. had a verbal comprehension index of 98, a perceptual reasoning index of 98, a working memory index of 68, a processing speed index of 94, and a full-scale IQ of 88.  (R. 31, 404).  These scores placed M.L.D. in the low average range of intellectual functioning, with her verbal and perceptual reasoning skills falling in the average range.  (R. 31, 405).  Dr. Wilson also noted that M.L.D. had an extreme deficit in her working memory, which "was likely to continue, and cause her serious

problems in school and eventually in the work setting, even with medication." (R. 31, 405). According to Wade, these findings refute the ALJ's determinations that M.L.D.'s working memory index has improved and that M.L.D. is no longer disabled. Doc. 12 at 17. Consequently, Wade asserts that the ALJ failed to give sufficient weight to Dr. Wilson's findings.

The court disagrees because, as a threshold matter, the opinion of a one-time examiner is not entitled to any special deference or consideration. *See* 20 C.F.R. §§404.1502, 404.1527(c)(2); *Crawford v. Comm'r, of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) ("The ALJ correctly found that because [Dr.] Hartig examined [Claimant] on only one occasion, her opinion was not entitled to great weight."). Moreover, although the ALJ does not specifically state what weight he afforded Dr. Wilson's opinion, it is clear that the ALJ discounted Dr. Wilson's findings by ultimately concluding "that the limitations alleged as a result of [M.L.D.'s mental] impairments are inconsistent with the substantial evidence of the record and that [M.L.D.] has a higher level of mental . . . functioning than that . . . alleged." (R. 32). The record supports the ALJ's finding. For example, although Wade alleged that M.L.D. had a short attention span and was easily distracted, (R. 32, 429), when compliant with her medication, M.L.D.'s grades improved, her mother reported that she was doing better (albeit with some on-going problems with attention), and M.L.D.'s teacher reported that M.L.D. stayed

on task for the most part.   (R.31-33).   Furthermore, M.L.D.'s intelligence test

scores showed her functioning in the average range of intellectual abilities.   (R. 33,

404-405).   Based on this record, the substantial evidence supports the ALJ's

decision.

### 2.  The ALJ properly evaluated the Claimant's mental impairments

Wade challenges next the ALJ's failure to evaluate M.L.D.'s mental

impairments under section 112.00 of the Listing of Impairments, specifically

Listing 112.05D, the listing for intellectual disabilities.  Doc. 12 at 17; *see also* 20

C.F.R. pt. 404, subpt. P, app. 1, at §112.00.  The Commissioner concedes that the

ALJ did not discuss whether M.L.D. met Listing 112.05D, but contends that the

omission is harmless because an "ALJ's finding as to whether a claimant meets a

listed impairment may be implied from the record."   Doc. 15 at 8 (quoting

*Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x. 868, 870 (11th Cir. 2012) (citing

*Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986))); *see also Turberville*

*ex rel. Rowell v. Astrue*, 316 Fed. App'x. 891, 893 (11th Cir. 2009) ("[T]hough the

ALJ did not explicitly discuss why [the Claimant] did not actually meet Listing

112.05 — substantial record evidence supports that [the Claimant's] condition did

not actually or functionally meet Listing 112.05. . . .").  The court agrees.

To satisfy Listing 112.05D, Wade must show that M.L.D. meets the

intellectual disability diagnostic description, 20 C.F.R. pt. 404, subpt. P, app. 1,

§§112.00A, 112.05D, in particular, subpart D, which requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function," 20 C.F.R. pt. 404, subpt. P, app. 1, §112.05D.   Wade cannot make this showing because M.L.D. had a verbal comprehension index of 98, a perceptual reasoning index of 98, and a full-scale IQ of 88.  (R. 31, 404).  Moreover, Wade's contention that M.L.D.'s working memory index of 68 qualified M.L.D. for consideration under Listing 112.05D is unavailing because Wade has not provided any support for the position that a working memory score of 68 is synonymous with a "valid verbal, performance, or full scale IQ of 60 through 70."  In fact, to the contrary, "[w]hile the previous version of the Wechsler, the WISC-III, reported scores as performance IQ, verbal IQ, and full scale IQ, as used by the Listing, the WISC-IV reports scores as 'verbal comprehension,' 'perceptional reasoning,' 'working memory,' processing speed,' and 'full scale score.'" *Isaac ex rel. JDM v. Astrue*, 2012 WL 5373435, at \*3 (S.D. Ala. Oct. 30, 2012) (citing David Wechsler, *WISC-IV Administration and Scoring Manual*, p. 4, The Psychological Corporation (2003)).  "[T]he WISC-IV 'Verbal Comprehension Index' is equivalent to Verbal IQ . . . and 'Perceptional Reasoning' is equivalent to Performance IQ . . . ." *Isaac ex rel. JDM*, 2012 WL 5373435, at \*3 (citing David Wechsler, *WISC-IV Administration and Scoring Manual*, at p. 4).  There is simply no support in the

WISC-IV scoring manual for the contention that the working memory score is equivalent to verbal IQ, performance IQ, or full scale IQ.

## VI.    Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that M.L.D. is no longer disabled is supported by substantial evidence, and the ALJ applied the correct legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 16th day of June, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE